**John G. HAGMEYER, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF TREASURY, et al., Defendants.**

Civ. A. No. 86–0584.

United States District Court,
District of Columbia.

Nov. 6, 1986.

See also, Fed. Cir., 795 F.2d 1019.

Peter J. Carre, Washington, D.C., for plaintiff.

Michael L. Martinez, Asst. U.S. Atty., Washington, D.C., for defendants.

OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendants' motion to dismiss or for summary judgment ("Motion to Dismiss"), plaintiff's opposition thereto, defendants' reply brief, and the entire record herein. For the reasons stated below, the Court grants defendants' motion to dismiss.

## I. *Background*

Plaintiff filed the instant case on March 3, 1986, alleging various intentional and constitutional torts committed by two federal government agencies and four federal law enforcement officers. Count I of the complaint contains allegations of malicious prosecution and misrepresentation by defendants United States Department of Treasury ("Treasury") and United States Secret Service ("Secret Service"). Count II contains a claim of deprivation of constitutional due process rights against defendants Stephen Hornyak, Treasury, and Secret Service. In Count III of the complaint, plaintiff alleges that defendants Lawrie C. Rich, Donna L. Truit, and Dale Sowards made defamatory statements about him which damaged both his personal and professional reputation. Plaintiff seeks $10 million in compensatory, punitive and exemplary damages.

In order to appreciate fully the claims presented by plaintiff, the Court must first outline the events underlying the present action. Plaintiff is a sergeant in the Uniformed Division of the Secret Service and has been employed by that agency since 1975. During his tenure at the Secret Service, plaintiff received numerous commendations and had an excellent work record.

For several years prior to June 1982, plaintiff worked without incident as a recruiting officer for the Secret Service. However, in June 1982, he was served with a "Notice of Removal" from the agency. This notice listed five reasons or counts for the agency's action. The reasons given were:

1. Encouraging an applicant to submit an inaccurate official form;

2. The appearance of conflict of interest by socializing with applicants;

3. The appearance of using the authority of his position for personal benefit;

4. Insubordinate refusal to comply with a directive from authorized Secret Service officials; and

5. Falsification of fact in response to questioning by authorized Secret Service officers.

Defendants' Statement of Material Facts Not in Dispute ("Defendants' Facts") ¶ 3; Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss or for Summary Judgment ("Plaintiff's Opposition") at 2.

Subsequently, plaintiff appealed his removal to the Merit Systems Protection Board ("MSPB"). Sometime during the MSPB discovery process and before the commencement of hearings before that Board, the Secret Service dropped four of the removal counts, Counts 2 through 5. The Secret Service continued to seek his removal on the remaining count, Count 1. Plaintiff claims that the four dropped counts were "filed solely to harass, embarrass, and burden him," and "[t]he true reason for dropping the charges [was that the Secret Service] wished to protect its officials from having to testify under oath about numerous irregularities and improprieties brought to light by plaintiff in defense of the scurrilous accusations brought against him." Plaintiff's Opposition at 2.

An evidentiary hearing on plaintiff's removal was held before an MSPB presiding officer on February 1–2, 23–24, and March 1–2, 1983. During the hearing, three witnesses called on plaintiff's behalf testified that officials at the Secret Service had intimidated and ordered them not to testify. Plaintiff's Opposition at 3; *see also* Exhibit 1, attached to Plaintiff's Opposition, at 1–9. At the direction of the presiding MSPB official, counsel for the Secret Service assured the witnesses that there would be no acts of retaliation against them. Furthermore, Mr. Edward Pollard, an agency official, wrote a letter to these witnesses and personally assured them that no acts of reprisal would be taken against them for their participation in plaintiff's hearing. Exhibit 5, attached to Defendants' Reply to Plaintiff's Opposition to the Motion to Dismiss or for Summary Judgment ("Defendants' Reply"). Plaintiff also alleged at the hearing that other prospective witnesses

were intimidated and received orders not to testify on his behalf.

The hearing concluded on March 2, 1983. The presiding official found, *inter alia*, that plaintiff's removal was warranted and affirmed the Secret Service's action. The presiding official commented that the penalty of removal seemed severe for what she described as Hagmeyer's immature act, but she determined that the agency had not exceeded the bounds of reasonableness, given plaintiff's position as a law enforcement officer. The full MSPB affirmed that decision on May 11, 1984. *See* 20 M.S.P.R. 612 (1984).

Plaintiff appealed the full Board's decision to the United States Court of Appeals for the Federal Circuit. *See generally Hagmeyer v. Dept. of Treasury*, 757 F.2d 1281 (Fed.Cir.1985). The court held in *Hagmeyer* that it was inappropriate to uphold plaintiff's removal given the nature of the single remaining charge. *Id.* at 1285. It found that [t]he remaining charge, constituting the sole basis for the removal action, appear[ed] to be one of the least egregious," *id.*, and remanded the case for a determination of a lesser penalty. Upon remand, the MSPB, on October 1, 1985, returned plaintiff to his job but imposed a 60–day suspension.

Several months after his return, plaintiff filed the instant lawsuit, alleging unconstitutional and tortious actions by the named defendants. In Count I, plaintiff claims that defendants Treasury and Secret Service brought the removal action based on false charges with the intention of harming his personal and professional reputation. As a result of the removal action, plaintiff claims that he was forced to challenge his removal through proceedings with the MSPB and eventually the United States Court of Appeals for the Federal Circuit. He further states that even though four of the charges had been dropped by the Secret Service, "their representatives appeared at an unemployment compensation hearing on or about March 17, 1983 and maliciously and falsely represented to the authorities there that plaintiff [had been] terminated from employment" based on those charges. Complaint ¶ 13. This count contains claims for malicious prosecution and misrepresentation against defendants Treasury and Secret Service.

Count II contains a claim of deprivation of plaintiff's due process rights by defendants Hornyak, Treasury, and Secret Service. Plaintiff alleges that "[o]n or about March 3, 1983, defendant Hornyak, at the behest of defendants Treasury and Secret Service, intentionally and maliciously interfered with plaintiff's litigation at [the] MSPB by intimidating witnesses to be called by plaintiff in support of his case." Complaint ¶ 16. In addition, plaintiff alleges that defendant Hornyak threatened these witnesses with reprisal and even arranged their duty schedules in order to make their appearances at the hearing impossible. *Id.* ¶ 17.

Finally, plaintiff alleges in Count III that defendants Rich, Truit, and Sowards defamed him. As to defendants Rich and Truit, plaintiff claims that they made defamatory statements "[a]t different times, places, and dates after March 1982" which accused him of sexual harassment and adulterous behavior. *Id.* ¶¶ 19–20. Defendant Sowards is accused of making defamatory statements "[a]t different times, places, and dates on and after December 1985" which said that "plaintiff was guilty of all the charges originally brought against him" by the Secret Service and "that plaintiff was a liar" and "not fit for duty for preferred assignments in the Secret Service." *Id.* ¶ 21. Plaintiff alleges that these statements damaged his personal and professional reputation, held him up to public ridicule, and caused him to suffer great mental pain, anguish and distress.

Defendants filed a motion to dismiss or for summary judgment. They contend that the Court lacks jurisdiction over the subject matter and the defendants and the complaint fails to state a cause of action upon which relief may be granted. Fed.R.Civ.P. 12(b)(1), (b)(2), (b)(4), (b)(5), and (b)(6). They also assert that the four individual defendants are entitled to immunity from

suit and the suits against them should be dismissed on that basis. Alternatively, the defendants ask the Court to grant a motion for summary judgment in their favor. The Court will address each argument presented by defendants in their motion in its discussion below.

## II. *Discussion*

### A. *Improper Service*

■ Defendants argue that the Court lacks personal jurisdiction over each individual defendant because they were not served in the manner prescribed by Rule 4(d)(1). They challenge the Court's jurisdiction over them even though they filed this dispositive motion. Defendants contend that contrary to the mandate of Rule 4(d)(1), "none of the four individual defendants has been served personally and there has been no service of the Complaint and summons to their dwelling places." Motion to Dismiss at 4.

Rule 4(d)(1) of the Federal Rules of Civil Procedure provides, in pertinent part, that service of a summons and complaint shall be served

> [u]pon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Defendants base their contentions concerning lack of personal jurisdiction on the fact that "[s]ervice upon the individual defendants was in each case attempted by mailing the summons and complaint to their offices by certified mail." Motion to Dismiss at 5. According to defendants, unauthorized persons accepted and signed the mail for three of the individual defend-

ants. Defendant Truit signed and returned a service of process notice but the summons contained therein was addressed to the Secret Service. She has never returned or acknowledged any service addressed to her. Plaintiff disagrees with defendants' arguments and avers that the Court has personal jurisdiction over all four of the individual defendants.

"The primary function of [Federal Rule of Civil Procedure 4] is to provide the mechanisms for bringing *notice of the commencement of an action* to defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over the lawsuit." 4 C. Wright & A. Miller, Federal Practice and Procedure § 1063, at 204 (1969 & Supp.1977) (emphasis added). "To that end, the Rule provides a wide range of alternative methods of service, including registered mail, each designed to ensure the receipt of actual notice of the pendency of the action by defendant." *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312 (D.C.Cir.1980). In general, the "attitude of the federal courts is that the provisions of Rule 4 should be liberally construed[1] in the interest of doing substantial justice and that the propriety of service in each case should turn on its own facts within the limits of the flexibility provided by the Rule itself." *Id.* at n. 61. *See, e.g., Blackhawk Heating v. Turner*, 50 F.R.D. 144 (D.C.Ariz.1970) (holding the same). This attitude, which is shared by this Court, is consistent with the modern conception of service of process as primarily a notice-giving device.

It appears to the Court that all four individuals are subject to this Court's personal jurisdiction. The fact that service as to these particular defendants did not conform precisely to the specifications contained in Rule 4 does not cause the Court to draw a different conclusion in view of

---

**1.** Notwithstanding the general policy of liberal construction of Rule 4 to effectuate service where the defendant has actual notice of the suit, several courts still take the position that service of a summons in a manner prescribed

by statute is a condition precedent to a valid exercise of personal jurisdiction. *See, e.g., Sieg v. Karnes*, 693 F.2d 803 (8th Cir.1982), and *Chilcote v. Shertzer*, 372 F.Supp. 86 (E.D.Wisc.1974).

the circumstances surrounding this case. All four defendants received prompt notice of the pending suit at their respective places of employment. While it may be true that unauthorized persons signed at least three of the service notices, the Court feels certain that the service of the summonses and complaints was brought promptly to the defendants' attentions. Furthermore, the fact that defendant Truit signed and returned the service notice before realizing it was intended for the Secret Service evidences an intent by her to submit herself to the jurisdiction of this Court for the purpose of this lawsuit. Accordingly, the Court finds that it can exercise personal jurisdiction over all four defendants.

**B.** *FTCA Claims Against Defendants Treasury and Secret Service For Malicious Prosecution and Misrepresentation*

■ Count I of the complaint seeks monetary relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.,* for the alleged tortious acts of malicious prosecution and misrepresentation. The federal government and its agencies are "absolutely shielded from tort actions for damages unless sovereign immunity has been waived." *Kline v. Republic of El Savador,* 603 F.Supp. 1313, 1316 (D.D.C. 1985) (citing *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976), and *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980)). The FTCA, however, waives sovereign immunity in a limited number of tort actions. *See* 28 U.S.C. § 2680(h) (1976).

Section 2675(a) of the FTCA requires a plaintiff to file his claim with the appropriate government agency before bringing suit in federal court. "This explicit statutory directive applies without exception and therefore has been termed 'jurisdictional.'" *Hohri v. United States,* 782 F.2d 227, 245 (D.C.Cir.1986). "[T]he jurisdictional FTCA filing requirement is not subject to equitable waiver." *Id.*

Defendants contend that Count I of the complaint must be rejected for failure to exhaust administrative remedies pursuant to 28 U.S.C. § 2675(a). They assert that plaintiff failed to file any administrative claims with defendant government agencies regarding his claims for misrepresentation and malicious prosecution. The only "administrative claims" submitted by plaintiff were requests for moving expense reimbursement, compensation for the promotion he claims he would have received but for the removal action, and his request for attorneys' fees and costs. He filed the latter request with the MSPB. Defendants' Reply to Plaintiff's Opposition to the Motion to Dismiss or for Summary Judgment ("Defendants' Reply") at 2. The plaintiff does not dispute these facts.

It is quite apparent to the Court that plaintiff's previously filed administrative claims do not mirror the claims encompassed in Count I of his complaint. Plaintiff has not filed any administrative claims regarding his allegations of malicious prosecution and misrepresentation with defendants Treasury or Secret Service and these agencies have not had the opportunity to consider his claims. The Court, therefore, finds that plaintiff has failed to exhaust his administrative remedies and thereby meet a jurisdictional requirement of the FTCA.

Furthermore, another basis precludes plaintiff's claims under the FTCA. Section 2679(a) [2] of "the Act directs that the exclusive remedy for common law tort claims is an action against the *United States* rather than against the individuals or the particular governmental agencies...." *Kline,*

---

**2.** Section 2679(a) of the Federal Tort Claims Act provides,

   (a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such case shall be exclusive. 28 U.S.C. § 2679(a). Section 1346(b) confers jurisdiction upon district courts in civil actions against the *United States. See* 28 U.S.C. 1346(b) (1976).

603 F.Supp. at 1316 (emphasis added). Here, plaintiff elected to sue two federal agencies instead of the United States. For this reason and in view of the discussion on plaintiff's failure to exhaust administrative remedies, the Court finds that the FTCA constitutes an insuperable obstacle to plaintiff's Count I claims insofar as he seeks relief against defendants Treasury and Secret Service.

## C. *Constitutional Tort Claims*

In Count II of his complaint, plaintiff alleges a deprivation of his fifth amendment due process rights by defendants Treasury, Secret Service, and Hornyak. Plaintiff "instituted [this] action against the federal government under the FTCA and against the individuals under the Constitution." Plaintiff's Opposition at 10. Before addressing plaintiff's constitutional tort claims against defendant Hornyak, the Court will first consider plaintiff's FTCA action against the agencies. As shown in the earlier discussion of plaintiff's Count I FTCA claims, the FTCA applies only to actions against the United States or individuals. An action against a federal agency is not recognizable under the Act. *See* 28 U.S.C. § 2679(a). Accordingly, the Court grants defendants' motion to dismiss as to this portion of the Count II claim.

The sole remaining Count II claim is plaintiff's *Bivens*[3] action against defendant Hornyak. Plaintiff claims that Mr. Hornyak denied him due process in proceedings before the MSPB by his alleged intimidation of plaintiff's witnesses. Defendants assert that any cognizable *Bivens* action against defendant Hornyak is barred by the applicable statute of limitations. The Court agrees with defendants.

■ "When a federal action contains no statute of limitations, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period." *Doe v. United States Dept. of Justice*, 753

F.2d 1092, 1114 (D.C.Cir.1984) (*Bivens* action case) (citations omitted). The District of Columbia's statute of limitations, therefore, is applicable in this instance. This statute provides a three-year limitations period for actions like this "for which a limitation is not otherwise specially prescribed...." D.C.Code Ann. § 12–301(8).

■ Both parties have selected various dates on which the statute of limitations period began to run. These dates share one common element—they were all chosen to represent the last possible date on or before which any alleged acts of intimidation of witnesses by defendant Hornyak could have occurred. For example, plaintiff alleges in his complaint that the acts of intimidation by defendant Hornyak occurred "[o]n or about March 3, 1983." Complaint ¶ 16. Plaintiff obviously chose this date in order to fall within the three-year statutory period since he filed the instant lawsuit exactly three years later. Defendants, on the other hand, argue that "for any witness intimidation to properly be before the court it would have had to occur on or later then [sic] March 1 and 2, 1983." Defendants' Reply at 5. These dates were chosen since they were the last two days of plaintiff's MSPB hearings.

The Court agrees with the underlying premise used by the parties in their selection of the date for determination of the statute of limitations time period. However, the Court disagrees with their respective choices. After a close examination of the entire record, the Court concludes that February 25, 1983, is the date to be used in calculating the statute of limitations period.

The Court reaches this conclusion because February 25, 1983, is the date on which Edward J. Pollard, a Secret Service official, wrote a memorandum to three of plaintiff's witnesses to assure them that no actions of reprisal would be taken against them if they testified during plaintiff's MSPB hearings. *See* Exhibit 5. Mr. Pol-

---

**3.** *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which established that victims of a constitutional violation by a federal official have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.

lard encouraged the witnesses to testify in the proceedings and "to respond to any questions in a direct[,] complete and truthful manner." *Id.*

The Pollard memorandum was written in response to testimony by Sergeant Edward Melerski during plaintiff's MSPB hearing. Sergeant Melerski testified that he had been ordered not to testify at the hearing by a high Secret Service official under a threat of retaliation. It appears to the Court that none of the alleged acts of intimidation could have occurred after this memorandum was written. In fact, all three of the witnesses who received the memorandum testified on plaintiff's behalf after either receiving verbal assurance of no reprisals during the actual hearing or receipt of the February 25th letter.

Sergeant Edward Melerski testified on February 24, 1983, the fourth day of the hearing. Hagmeyer Affidavit attached to Plaintiff's Opposition ("Haymeyer Affidavit") ¶ 6; exhibit 1 at 2–3. During his testimony, Sergeant Melerski expressed some reservations about testifying due to his fear of reprisal. Exhibit 1 at 2. Ms. Jane Vezeris, counsel for the Secret Service, offered Sergeant Melerski her personal assurance that no retaliatory actions would be taken against him. *Id.* at 2–5. The testimony proceeded as follows:

> MS. VEZERIS: ... [A]ll I can tell you is that there certainly would be no reprisal action taken for your participation in this hearing no matter what you testify to. It's expected that you will tell the truth, and that's what we hope that you will tell, and we certainly wouldn't want to take a reprisal action against an employee who is going to be telling the truth no matter what it comes out to be.
>
> APPEALS OFFICER: Does this put you at rest at all? I certainly hope that there will be no feeling on your part that there should be any retaliation.
>
> THE WITNESS: Well there's feeling ma'am, *but I want to do this of course, yes.*
>
> APPEALS OFFICER: Well I'm sure we're all aware of the sergeant's con-

cern, and you would certainly have a very valid reason to complain if there were anything to happen. But I'm sure based on the agency's assurances that nothing will. All right, Mr. Morris.

> BY MR. MORRIS: [Plaintiff's attorney]
>
> Q. *Do you feel comfortable sergeant?*
>
> A. *Yes—I guess, yes.*

Exhibit 1 at 3–4 (emphasis added). Lieutenant Melvin Lindsley and Officer Jose Perez also testified on March 1, 1983, the fifth day of the hearing and several days after the Pollard memorandum was written.

In view of these facts, the Court finds that none of the alleged acts of retaliation could have occurred after February 25, 1983, and this is the date on which the statute of limitations period began to run. This three-year period ended on February 25, 1986, and plaintiff filed this lawsuit on March 3, 1986, more than six days after the limitations period. Accordingly, the Court finds that plaintiff's *Bivens* action against defendant Hornyak is barred by the statute of limitations. The Court, therefore, grants defendants' motion to dismiss as to defendant Hornyak.

Even if the statute of limitations did not bar plaintiff's suit, the Court's decision would remain unchanged. Plaintiff's claims of deprivation of due process are based on defendant Hornyak's alleged acts of intimidation toward plaintiff's witnesses. However, as shown above, three of these witnesses testified in spite of their fear of reprisal. Moreover, any other witnesses who failed to testify on plaintiff's behalf, chose to do so on their own given the Secret Service's assurances of no retaliation. Plaintiff, therefore, has failed to show that he was given anything less than a full and fair hearing before the MSPB and thus damaged in any way by the alleged acts of intimidation. Any damage sustained by plaintiff as a result of defendant Hornyak's alleged actions is at best *injuria absque damno.*

### III. *Conclusion*

For the foregoing reasons, the Court grants defendants' motion to dismiss as to all three counts of the complaint. Since the Court has dismissed the only two possible bases for federal court jurisdiction, it will not address the pendent state claims of defamation. *See Sanchez-Espinoza v. Reagan,* 770 F.2d 202, 210 (D.C.Cir.1985).