**GRAND ENTERTAINMENT GROUP, LTD., and Entertainment Industries, Inc.**

v.

**STAR MEDIA SALES, INC., et al.**

Civ. No. 86–5763.

United States District Court, E.D. Pennsylvania.

March 20, 1992.

E. Parry Warner, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiffs.

Janet S. Kole, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for defendants Nostra, S.A., Ricardo Sanz, S.A., and Ricardo Sanz Perez.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This matter came before me on the motion of defendants Ricardo Sanz Perez, Ricardo Sanz, S.A., and Nostra, S.A., to open or set aside a default, and on plaintiffs' competing motion to approve the report and recommendation of Magistrate Judge William F. Hall, Jr., recommending entry of default judgment in the amount of $34.4 million.[1] The defendants, Spanish citizens and residents, objected to the report and recommendation, claiming that they had not been properly served and thus had never become parties to the action. In a bench opinion rendered March 4, 1991, I determined that under Federal Rule of Civil Procedure 4(i)(1)(A) service was proper. Rule 4(i)(1)(A) provides that service of process on a foreign defendant in a foreign country is sufficient if the method of service comports with methods of service permitted for actions initiated in the foreign country's courts. I concluded that, in this case, service of the complaint had been accomplished in a manner permitted under Spanish law. Having concluded that service was proper, I nonetheless concluded that other considerations counseled that the default should be set aside if defendants satisfied several conditions.[2] Among the reasons that counseled against confirming the default and approving the default judgment in the amount recommended by Magistrate Judge Hall was my conclusion that plaintiffs' counsel should have made greater efforts to inform defendants' New York counsel of the damages hearing held before Magistrate Judge Hall, a hearing at which defendants made no appearance. There are now three motions before this court; these will be addressed in turn.

### I. Plaintiffs' motion for reconsideration

Plaintiffs ask that I revisit my ruling sustaining service of process. Plaintiffs are, of course, not dissatisfied with the ruling, but they ask that I broaden it by also adopting additional rationales (rationales that plaintiffs have previously advanced) that would provide independent support for the ruling. Having determined that the service was satisfactory under Rule 4(i)(1)(A) of the Federal Rules of Civil Procedure, I found it unnecessary to address those other rationales when I rendered my earlier bench opinion. Plaintiffs now ask that I rule on those other theories, apparently in an effort to buttress their position in advance of an effort to pursue collection proceedings in Spain. Although I initially declined plaintiffs' invitation to provide additional grounds in support of my ruling, I have come to the conclusion that considerations of judicial economy merit addressing those asserted additional grounds at this time.

---

**1.** Magistrate Judge Hall found that the evidence supported base level damages in the amount of approximately $11.5 million. As the complaint contained an allegation of civil RICO violations, Magistrate Judge Hall recommended that the default judgment amount be trebled to approximately $34.4 million in accordance with the RICO statute, 18 U.S.C. § 1964(c).

**2.** As modified slightly by written order of March 12, 1991, the conditions would require defendants (1) to accept service of the summons and complaint, (2) to pay plaintiffs' costs, including attorneys' fees, incurred in the effort to obtain default judgment, (3) to post a bond in the amount of $250,000 to secure any judgment that might be entered against one or more of the defendants, and (4) to post a bond in the amount of $50,000 to secure the payment of plaintiffs' costs and attorneys' fees. In addition, Ricardo Sanz Perez would be required to appear for deposition in Philadelphia at his own expense.

The facts regarding service of process are as follows: Plaintiffs engaged an American attorney practicing in Madrid, Elizabeth Powers, to effect service upon defendants Nostra, S.A., Ricardo Sanz, S.A., and Ricardo Sanz Perez. Powers, in turn, engaged the services of a notary public to deliver the summons and complaint to defendants. On July 24, 1987, the notary public took the summons and complaint to Gran Via 40 in Madrid, where, Powers had ascertained, defendants maintained offices. The notary public presented himself to an individual who identified herself as the telephone operator and receptionist for the building. That individual stated that defendants did have an office in the building, but that the office was vacant because the individuals who worked there were on vacation. The operator/receptionist agreed to accept the summons and complaint and to deliver them to defendants when their offices reopened.[3]

I have previously determined that the above manner of service was in accordance with Spanish law, and thus was proper service of process under Rule 4(i)(1)(A). Plaintiffs assert that there are three additional grounds on which service upon defendants in this case may be held proper. These will be addressed in turn.

### 1. Federal Rule of Civil Procedure 4(i)(1)(C)

█ Federal Rule of Civil Procedure 4(i)(1)(C) states that service in a foreign country is sufficient if service is made "upon an individual, by delivery to the individual personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent." Plaintiffs argue that service was accomplished pursuant to this rule because, although the notary engaged by plaintiffs did not deliver the summons and complaint to Ricardo Sanz directly, the receptionist/telephone operator with whom the nota-

ry left the summons and complaint did in fact deliver them to Mr. Sanz. As an initial matter, I note that Mr. Sanz does not affirmatively deny receipt of the summons and complaint; for the purposes of this motion, I am willing to accept that the receptionist/operator did, in fact, deliver the documents to Mr. Sanz.

█ The mere fact that Mr. Sanz may have received the summons and complaint, however, is not sufficient to make service acceptable under Rule 4(i)(1)(C). It is true that the Federal Rules do not explicitly specify who is to effect personal delivery to an individual: Rule 4(c)(2) permits service by "any person who is not a party and is not less than 18 years of age." It is also true, however, that accomplishing service of process is ultimately plaintiff's responsibility: the person whom plaintiff engages to serve process may not simply deliver the summons and complaint to a third party with instructions to pass the documents on to the defendant. This is so even if the person to whom the process server delivers the summons and complaint works closely with defendant, unless that person has been designated by defendant to receive process. *See, e.g., Lensel Lopez v. Cordero*, 659 F.Supp. 889, 890 (D.P.R.1987) ("Service through a secretary, even a personal secretary, ... is invalid if not authorized); *Christian Populist Party v. Secretary of State*, 650 F.Supp. 1205, 1212 (E.D.Ark. 1987) (service on workers in reception area of defendants' offices is ineffective); *Betlyon v. Shy*, 573 F.Supp. 1402, 1405–06 (D.Del.1983) (service on defendant's supervisor and on second defendant's secretary were ineffective as personal service on defendants). Delivery by the receptionist/operator to Mr. Sanz, if it indeed occurred, does not constitute "delivery" within the meaning of Rule 4(i)(1)(C).

This conclusion is not inconsistent with the general policy that, where a defendant has received actual notice of a law suit,

---

**3.** Prior to this episode, plaintiffs had attempted on at least three other occasions to serve defendants. Twice, plaintiffs sent the summons and complaint to defendants by registered mail; on each occasion, the papers were returned. Once, plaintiffs attempted, through a notary public, to serve defendants at offices at Doce de Octubre no. 28; the notary public was informed that defendants did not maintain offices at that address, and therefore did not leave the summons and complaint.

Rule 4 is to be liberally construed. *See F.T.C. v. Compagnie de Saint–Gobain–Pont–a–Mousson*, 636 F.2d 1300, 1312 n. 61 (D.C.Cir.1980); *Concepcion v. Veb Backereimaschenbau Halle*, 120 F.R.D. 482, 485 (D.N.J.1988); *Hagmeyer v. United States Dep't of Treasury*, 647 F.Supp. 1300, 1303 (D.D.C.1986). Those cases that have upheld service of process despite technical failures in performance have done so on the theory that service was made in a manner reasonably calculated to bring the summons and complaint to the attention of the defendant. They have therefore concluded that service complied with the spirit of Rule 4, even if it did not literally comply with any of the rule's specific provisions. *See Hagmeyer*, 647 F.Supp. at 1303–04. Such a theory, however, cannot be held to support the validity of service *under Rule 4(i)(1)(C)*, which is the declaration that plaintiffs here seek. Service on the telephone operator and receptionist of the building in which defendants maintained offices may have been within the spirit of Rule 4, and I have already determined that it was in compliance with Rule 4(i)(1)(A). There can be no doubt, however, that service was not in literal compliance with Rule 4(i)(1)(C). Plaintiff's request that service be held valid pursuant to that particular facet of Rule 4 must be denied.

### 2. *Pennsylvania Rule of Civil Procedure 402(a)(2)*

 Rule 4(e) provides that, where the individual sought to be served is not present in the state in which the district court sits, service may be accomplished by any means that state law provides for service upon such individuals. *See* Fed. R.Civ.P. 4(e). Plaintiffs therefore look to Pennsylvania law to support their service upon the Spanish defendants in this case.

Plaintiffs first point to Rule 402(a)(2) of the Pennsylvania Rules of Civil Procedure. That rule provides for service:

> by handing a copy

(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Plaintiffs contend that the receptionist/operator of defendants' office building was "the person for the time being in charge" at the time that plaintiffs' agent delivered the summons and complaint, even though the receptionist/operator was not employed by defendants.[4]

The question of who qualifies as a "person for the time being in charge" has scarcely been litigated, either under Rule 402 or the former Rule 1009 (the predecessor to Rule 402, repealed in 1985). Instead, virtually all challenges to service under these rules have focused on the question of whether the location at which service was attempted constituted an "office or usual place of business of the defendant." *See, e.g., Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 321 A.2d 906, 910 (1974) (service under Rule 1009); *Williams v. Office of Public Defender*, 402 Pa.Super. 188, 586 A.2d 924, 925 (1990) (service under Rule 402); *Martin v. Gerner*, 332 Pa.Super. 507, 481 A.2d 903, 907 (1984) (service under Rule 1009); *Loprete v. Langcliffe Collieries, Inc.*, 67 Pa.D. & C. 438, 441–42 (Lack. Co.1948) (service under Rule 1009). The Pennsylvania cases are thus of little assistance. I have already decided that the office at Gran Via 40 was an office or principal place of business for defendants Nostra S.A., Ricardo Sanz, S.A., and Ricardo Sanz Perez in his individual capacity, for the purposes of service under Spanish law, and nothing in the briefing of any party suggests that a different conclusion should be reached for the purposes of service under the Pennsylvania Rules of Civil Procedure.

The focus on the propriety of the place at which service is attempted, rather than on the person with whom the summons and complaint are left, suggests a balance between the need to accomplish service in a

---

**4.** Ricardo Sanz has filed an uncontroverted affidavit stating that the receptionist/operator was not employed by defendants and was not authorized to receive service on behalf of defendants. It is thus clear that the receptionist/operator was not defendants' "agent" within the meaning of Rule 402(a)(2)(iii). This conclusion does not foreclose the possibility that the receptionist/operator was the "person in charge," however.

manner calculated to give actual notice to defendants and a desire to facilitate service upon corporate entities and the individuals who have proprietary interests in those entities. Once plaintiff's agent for the purpose of accomplishing service has identified an office or principal place of business of defendant, service is adequate under Pennsylvania law provided that process is left with an individual whom the process server has determined to have sufficient authority to ensure that actual notice will be provided.

Those few cases that have determined service to be inadequate because not left with a "person for the time being in charge" have focused on the lack of any apparent effort by the process server to determine if the individual with whom the summons and complaint were left in fact possessed such authority. The apparent concern in such cases is that papers left with an individual other than an individual in charge risk being lost in a busy working environment. For example, *Comyn v. SEPTA*, 141 Pa.Cmwlth. 53, 594 A.2d 857 (1991) involved service under a parallel provision of Rule 422, which governs service upon the Commonwealth of Pennsylvania and political subdivisions.[5] A deputy sheriff attempted service upon the City of Philadelphia by leaving the summons and complaint with an individual whom the deputy sheriff assumed was a receptionist on the ninth floor of City Hall. It was apparent that the deputy sheriff had made no effort to ascertain either the name or the official capacity of the individual with whom the summons and complaint were left. The court therefore concluded that service was improper. *See id.* 594 A.2d at 859–60.

Likewise, in *Nahrgang v. Nahrgang*, 86 Pa.D. & C. 135 (Phila.Co.1953), process was left with a watchman during working hours. The court determined that, without further evidence of the watchman's duties, the watchman could not be considered a person in charge during the daytime. *See id.* at 138. Neither of these cases stands for the proposition that a watchman, receptionist, or the like cannot under any circumstances be a "person for the time being in charge."[6]

■ Defendants' argument seems to be that, because the offices at Gran Via 40 were closed and the receptionist/operator was not in defendants' employ, in effect there was *no one* in charge and thus no one legally qualified to accept service. I am unpersuaded by this argument. The Pennsylvania Rules of Civil Procedure, read as a whole, are intended to facilitate, rather than to block, service of process on a corporation or individual where the plaintiff has appropriately identified the principal place of business of the entity to be served. There is evidence in the record that the receptionist/operator routinely accepted mail and took telephone messages for tenants of the building when the tenants' offices were closed; there is no indication that defendants objected to the performance of those duties. To the extent that anyone was in charge of defendants' offices, it was the receptionist/operator. Under the circumstances, the fact that the receptionist/operator, strictly speaking, was employed by someone other than defendants would seem a technicality insufficient to defeat service of process.[7] I there-

5. Rule 422(b) permits service upon a political subdivision by delivery to
 (1) an agent duly authorized by the political subdivision to receive service of process, or
 (2) the person in charge at the office of the defendant, or
 (3) the mayor, or president, chairman, secretary or clerk of the tax levying body thereof, and in counties where there is no tax levying body, the chairman or the clerk of the board of county commissioners.

6. Interpreting a parallel provision of Rule 424, which provides for service upon corporate entities, the Superior Court of Pennsylvania has

stated: "[W]e are not prepared to say that a receptionist can *never* be deemed to be a 'person for the time being in charge' of a regular place of business for a corporation." *Trzcinski v. Prudential Property and Casualty Ins. Co.*, 409 Pa.Super. 114, 597 A.2d 687, 689 (1991). Unfortunately, the decision gives no further guidance on the circumstances in which a receptionist might properly be considered to be the person for the time being in charge.

7. Defendants cite a 1905 case from the Court of Common Pleas for Centre County, *Haynes v. New York Central & Hudson River R.R. Co.*, 15 Pa.D. 970 (Centre Co.1905), for the proposition

fore conclude that service was proper pursuant to Pennsylvania Rule of Civil Procedure 402(a)(2)(iii).[8]

### 3. *42 Pa.C.S.A. § 5323*

■ Finally, plaintiffs argue that 42 Pa. C.S.A. § 5323 renders valid service accomplished in a manner approved by the law of the jurisdiction in which service is attempted, by an individual who, though not authorized to serve process by the foreign jurisdiction, is authorized by Pennsylvania law to accomplish service. Section 5323(a) provides:

> When the law of this Commonwealth authorizes service of process outside this Commonwealth, the service, when reasonably calculated to give actual notice, may be made:
>
> (1) By personal delivery in the manner prescribed for service within this Commonwealth.
>
> (2) In the manner provided or prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction.
>
> (3) By any form of mail addressed to the person to be served and requiring a signed receipt.

> (4) As directed by the foreign authority in response to a letter rogatory.
>
> (5) As directed by a court.

42 Pa.C.S.A. § 5323(a). Section 5323(c) provides:

> Service outside this Commonwealth may be made by an individual permitted to make service of process under the law of this Commonwealth or under the law of the place in which service is made or who is designated by a tribunal of this Commonwealth.

42 Pa.C.S.A. § 5323(c).

Plaintiffs have cited no authority for their interpretation of section 5323, and, indeed, this would appear to be a question of first impression. I first note that, under the Pennsylvania Rules of Civil Procedure, who may accomplish service and how service is to be accomplished are treated as separate issues under separate rules. *Compare* Pa.R.Civ.P. 400 ("Person to Make Service") *with* Pa.R.Civ.P. 402 ("Manner of Service"). I have already determined that service upon defendants was accomplished in a manner permitted by the law of Spain, and that a notary public was a proper agent to deliver process under the law of Spain. The sole question presented

---

that, to be a person in charge, an individual must be an employee of the entity sought to be served. Careful review of the court's decision reveals no such statement. However, even if the case did support defendants' position, I would not feel bound by an eighty-seven year old decision from a lower Pennsylvania court, particularly in light of the progressive liberalization of service rules that has occurred in the intervening years.

**8.** Defendants argue that even if service was accomplished in compliance with Rule 402(a)(2)(iii), the service was invalid because it was not accomplished within the 120–day period following the filing of the complaint, as contemplated by Rule 4(j) of the Federal Rules of Civil Procedure. Plaintiff counters that, because Rule 4(j) does not apply to service in a foreign country accomplished under Rule 4(i), the time limit should not apply to service accomplished in a foreign country pursuant to state law as incorporated by Rule 4(e). I find it unnecessary to address plaintiff's argument, because even if the 120–day limit applies to service under Rule 4(e), it is clear that defendants repeatedly refused to accept service, and that thus there was good cause for plaintiff's failure to

accomplish service during that period. Where such cause exists, Rule 4(j) specifies that the 120–day limit does not apply.

Defendants also argue that service was invalid under Rule 402(a)(2)(iii) because it was not accomplished during the 90–day period contemplated by Pennsylvania Rule 404. I likewise find this argument unconvincing. While Rule 404 does not have a good cause exemption parallel to that found in Federal Rule 4(j), the 90–day limit imposed by Pennsylvania procedure is hardly a strict limit. If service cannot be accomplished within the 90 days permitted by the rules, a plaintiff may obtain an additional 90 days by presenting the complaint to a prothonotary for reinstatement. The Pennsylvania Rules therefore are quite liberal in their treatment of the time limit for service. That liberality may not be translated directly to a proceeding in federal court, because the Federal Rules do not provide for reinstatement of the complaint. Under the circumstances, the good cause exemption of Federal Rule 4(j) is an appropriate substitute for the reinstatement provisions of the Pennsylvania Rules. I therefore conclude that plaintiffs' service upon defendants was timely.

here, therefore, is whether a notary public is permitted by Pennsylvania law to accomplish service of process in a foreign jurisdiction, assuming *arguendo* that I was incorrect in determining that Spanish law permitted service by a notary public.

I conclude that Pennsylvania law would not authorize a notary public to accomplish service under such circumstances. Plaintiffs have pointed to no provision that specifically authorizes a notary public to accomplish service in instances where other non-party adults are not permitted to accomplish service. I therefore turn to the provisions of Pennsylvania law that permit non-party adults to accomplish service.[9]

Rule 404(1) of the Pennsylvania Rules of Civil Procedure states that service in a foreign jurisdiction may be made "by a competent adult who is not a party in the manner provided by Rule 402(a);" Rule 404(2) provides for service "by any competent adult by mail in the manner provided by Rule 403." These rules do not amount to general authorizations for service in foreign jurisdictions by non-party adults; rather, they authorize service by non-party adults if service is accomplished in a particular manner. Likewise, service by non-party adults within Pennsylvania is limited to certain categories of cases. *See* Pa. R.Civ.P. 400(b). Actions such as the present action, alleging breach of contract, tortious interference with contract, and fraud, do not fall into the categories set forth in Rule 400(b).[10] Service by a notary public would not be authorized by Pennsylvania law unless it fell under one of these provisions. It is evident that, in the present case, it does not.

I have already decided that defendants were properly served under Rule 402(a)(2)(iii). In this portion of their motion, however, plaintiffs ask me to disregard Rule 402(a) and to determine the propriety of service by a notary under Pennsylvania law if service is made in a manner permitted, not by Rule 402(a), but by the law of a foreign jurisdiction. Given that Pennsylvania law appears to authorize out-of-state service by non-party adults only when accomplished in a manner explicitly set forth by Rules 402(a) and 403, I conclude that, considering the manner of service to be valid only under the law of a foreign jurisdiction, a notary public is not authorized by Pennsylvania law to accomplish service.[11] Accordingly, plaintiffs' motion to have service declared valid under sections 5323(a) and 5323(c) must fail.

## II. Defendants' motion for reconsideration

Defendants have moved for reconsideration of my order of March 12, 1991. Defendants filed their motion for reconsideration on May 30, 1991, well beyond the ten-day period provided for in Rule 20(g) of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania. Defendants' motion and the affidavit submitted in support thereof do not present arguments of a type that would justify defendants' failure to file the motion in a timely manner. Moreover, the affidavit submitted in support of defendants' motion does not persuade me that my decision of March 12, 1991, was in error. Defendants' motion therefore must be denied.

---

**9.** Section 5323(c) does not, in itself, resolve this problem: it merely states that service may be made by "an individual permitted to make service of process under the law of this Commonwealth." 42 Pa.C.S.A. § 5323(c).

**10.** Rule 400(b)(1) permits service by "a competent adult who is not a party in the following actions: equity, partition, prevent waste, declaratory judgment when declaratory judgment is the only relief sought, custody, partial custody and visitation of minor children, and divorce or annulment of marriage." Separate provisions allow competent adults to accomplish service in

actions for support and for protection from abuse. *See* Pa.R.Civ.P. 400(b)(2)–(3).

**11.** If the notary public were authorized by the law of the foreign jurisdiction to accomplish service, then service by that individual would be authorized under Pennsylvania law pursuant to section 5323 itself, which permits an individual to make service if permitted "under the law of the place in which the service is made." 42 Pa.C.S.A. § 5323(c). For the purpose of this part of its motion, however, plaintiffs ask me to assume that Spanish law does not permit service by a notary public.

### III. Plaintiffs' motion for entry of default judgment

Plaintiffs seek entry of default judgment in the amount of $11,473,750.00,[12] as well as an award of attorneys' fees in the amount of $56,166.85. Among the reasons that counseled against confirming the default and approving the default judgment in the amount recommended by Magistrate Judge Hall was my conclusion that plaintiffs' counsel should have made greater efforts to inform defendants' New York counsel of the damages hearing held before Magistrate Judge Hall—a hearing at which defendants made no appearance. I therefore determined to defer consideration of the motion for default judgment until a hearing could be held at which defendants would be able to participate.

During the year since I rejected Magistrate Judge Hall's report and recommendation, defendants have made it clear that they do not intend to contest damages in this court. In particular, on April 10, 1991, defendants' counsel wrote to the court as follows:

> Mr. Sanz has directed that I not contest damages in this matter because he believes his right of defense has been abrogated since this Court has no jurisdiction over him, service of process was not properly made on him in Spain, and the conditions your Honor imposed in order to lift the default were unfairly burdensome in that he was unable to comply with the bond requirement.

In defendants' absence, a hearing on plaintiffs' application for default judgment would merely duplicate the hearing previously held before Magistrate Judge Hall. Plaintiff has established to the satisfaction of the court damages in the amount of $11,473,750.00. In addition, for reasons given from the bench on March 4, 1991, plaintiff has established an entitlement to the attorneys' fees incurred in obtaining this default judgment, including the fees incurred to meet defendants' challenge to the validity of service of process. Accordingly, default judgment will be entered against defendants Nostra, S.A., Ricardo

Sanz, S.A., and Ricardo Sanz Perez in the amount of $11,473,750.00, plus $56,166.85 for costs and attorneys' fees.

An appropriate order follows.

### ORDER

For the reasons given in the accompanying memorandum, it is hereby ORDERED and DIRECTED that:

1. Plaintiffs' motion to reconsider the court's order of June 6, 1991, denying without prejudice plaintiffs' motion for ruling on alternative grounds for effectiveness of service of process is GRANTED, and service is determined to have been proper under Rule 402(a)(2)(iii) of the Pennsylvania Rules of Civil Procedure, as incorporated by Rule 4(e) of the Federal Rules of Civil Procedure.

2. Defendants' motion for reconsideration of the court's order of March 12, 1991, is DENIED.

3. Plaintiffs' motion for entry of default judgment and for attorneys' fees is GRANTED. Judgment is entered in favor of plaintiffs and against defendants Nostra, S.A., Ricardo Sanz, S.A., and Ricardo Sanz Perez in the amount of $11,473,750.00, plus $56,166.85 for attorneys' fees and costs.

---

12. In their Second Application for Entry of Default Judgment, plaintiffs have dropped their request that damages be trebled pursuant to RICO.